UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JASON CRUSE,

    Plaintiff,

v.                                                                      Case No. 2:10-cv-175
                                                                       HON. R. ALLAN EDGAR

ZETA WISE, et al.,

    Defendants.
_____/

**OPINION**

        Plaintiff Jason Cruse, an inmate currently confined at the Oaks Correctional Facility, filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against several employees of the Michigan Department of Corrections (MDOC). Specifically, Defendants include Registered Nurse Zita Wise, Health Care Supervisor Gloria Hill and Registered Nurse Glenn Richardson, all of whom were employed at the Baraga Maximum Correctional Facility (AMF) during the relevant time period.

        Plaintiff asserts that he suffered from a herniated disc in his back and that Defendants were deliberately indifferent toward his medical condition. On December 17, 2007, Plaintiff sustained an injury to his back while lifting weights at AMF. He was rushed to the Baraga County Memorial Hospital and was diagnosed as having a herniated disc. Plaintiff sought medical attention and treatment on several subsequent occasions. However, Plaintiff contends that Defendants Wise and Hill refused to refer Plaintiff to a doctor for further examination.

Plaintiff further alleges that on January 15, 2009[1], he suffered numbness in his back and legs while doing squats in his cell, which caused him to lose his balance and fall to the floor. Plaintiff states that he managed to reach the emergency button to call for help, but that the responding staff, including Defendant Richardson, refused to attend to him or transport him to health services because he was unable to get up from the floor and thus could not be restrained. Plaintiff alleges that he was treated by the AMF Health Care Doctor after several months of unnecessary delays and ill-treatment, and was diagnosed with a herniated disc, just as he had been diagnosed on December 17, 2007.

Plaintiff claims that Defendants' actions violated his rights under the Eighth Amendment to the United States Constitution. Plaintiff is seeking $200,000 in compensatory damages and $200,000 in punitive damages from each defendant. Presently before the Court are Defendants' Motions for Summary Judgment, pursuant to Fed. R. Civ. P. 56. Plaintiff has filed a response to the January 14, 2011, motion for summary judgment.[2]

Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and

---

[1] In Plaintiff's response to Defendants' motion for summary judgment, Plaintiff admits that he mistakenly put down the date of incident as January, 16, 2009, in his complaint.

[2] The court notes that the motion for summary judgment filed by Defendant Wise (docket #36), raises the same arguments for summary judgment as were raised in the motion for summary judgment filed by Defendants Hill and Richardson (docket #12). Therefore, Plaintiff's response (docket #29) is equally applicable to either motion for summary judgment.

admissions on file, that there is a genuine issue of material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52. Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

Plaintiff claims that Defendants denied him medical attention regarding his back injury, depriving him of his Eighth Amendment rights. The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo County*, 390 F.3d 890, 899 (6th Cir. 2004). If, however the need involves "minor maladies or non-obvious complaints of a serious need for medical care," *Blackmore*, 390 F.3d at 898, the inmate must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." *Napier v. Madison County, Ky.*, 238 F.3d 739, 742 (6th Cir. 2001).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under

> the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Estelle*, 429 U.S. at 105-06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Sanderfer*, 62 F.3d at 154-55; *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir. 1976). Where, "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Perez v. Oakland County*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998).

Initially, the record shows that Plaintiff satisfies the objective component of deliberate indifference, which requires that the medical need be sufficiently serious. When Plaintiff sustained a self-induced soft tissue back injury from lifting weights on December 17, 2007, he was treated at

a local emergency room, provided with medication, and returned to AMF. (Defendants' Exhibit A, p. 2-3.) Plaintiff was given ice, bandages and pain medications, was instructed to bed rest, and was restricted of bending, lifting, excessive standing, or walking for four days. However, Plaintiff's failure to follow numerous orders from medical staff negates the subjective component of deliberate indifference. Defendants offer excerpts from Plaintiff's medical record, which details Plaintiff's complaints and the treatment he received from December 17, 2007, to June 26, 2009. In addition, the certification of health record indicates that there are 813 pages of medical records, evidencing that Plaintiff has been seen by medical professionals on numerous occasions. Contrary to the instructions of medical staff, Plaintiff repeatedly aggravated his injury by exercising. On April 24, 2008, while doing jumping jacks and push-ups, Plaintiff got dizzy and fell down. (Defendants' Exhibit A, p. 11.) Again, on June 7, 2008, Plaintiff injured himself while doing squat exercises in his cell. (Defendants' Exhibit A, p. 12-17.) Defendant Richardson instructed Plaintiff to rest and completely avoid squats. (Defendants' Exhibit A, p. 14.) Plaintiff was placed on work restriction, denied access to the exercise room for four days, and given pain medication. (Defendants' Exhibit A, p. 14-17.) On October 12, 2008, Plaintiff was given Motrin after complaining of back pain. (Defendants' Exhibit A, p.18.) On October 15, 2008, Plaintiff was again observed exercising in his cell. (Defendants' Exhibit A, p. 19.) On December 3, 2008, Dr. Michael Engelsjerd noted that Plaintiff had a history of back pain as the result of self-inflicted injuries from lifting heavy weights on at least three occasions. (Defendants' Exhibit A, p. 21.) Plaintiff refused to cut down on his level of exercise and refused surgery that had been suggested by the specialist, but continued to complain of pain. (Defendants' Exhibit A, p. 21.)

On January 15, 2009, Plaintiff experienced sudden low back pain, and immediately lost feeling in the right leg while doing squats in his cell. When Defendant Richardson and Resident Unit Officers (RUO) Velmer and Truesdell were called for a health care evaluation, they asked Plaintiff to come to the door to be restrained, as policy requires a segregation prisoner to be restrained before breaching the door unless the condition of the prisoner is potentially life threatening. Plaintiff claims that he could not move because of excruciating pain in his back. However, because Plaintiff was able to stand up and move from the cell door to his bunk, the Resident Unit Officers determined that Plaintiff was not in an emergency situation. Later, Plaintiff was taken by ambulance for evaluation. A CT scan was performed which suggested a worsening of the bulging in his disc, which was attributed to Plaintiff's squat exercises. (Defendants' Exhibit A, p. 25.) On February 17, 2009, x-rays showed that Plaintiff had a herniated disc, which is the same diagnosis Plaintiff received on December 17, 2007. Despite an earlier diagnosis of the same ailment, Plaintiff attributes that condition to the alleged delay in seeing a doctor.

As stated above, disagreement between an inmate and medical personnel regarding the diagnosis and course of treatment does not implicate the Eighth Amendment. It is apparent from the record in this case that Plaintiff was seen by medical staff on numerous occasions, and received medications and accommodations to address his symptoms. In addition, Plaintiff received an identical diagnosis both before and after the claimed delay in medical care. For the reasons set forth above, the undersigned concludes that Plaintiff's injuries were not the result of Defendants' disregard for his condition, but were instead caused by Plaintiff's persistence in engaging in strenuous exercise against the advice of medical staff. Therefore, Defendants are entitled to summary judgment on Plaintiff's Eighth Amendment claims.

Finally, Defendants claim that Plaintiff's individual capacity claims are barred by qualified immunity because Plaintiff has failed to show a violation of clearly established law. Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987). "Qualified immunity balances two important interests-the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009).

In making a qualified immunity determination the court must decide whether the facts as alleged or shown make out a constitutional violation or whether the right that was allegedly violated was a clearly established right at the time of the asserted misconduct. *Id.* at 816. If the court can conclude that either no constitutional violation occurred or that the right was not clearly established, qualified immunity is warranted. The court may consider either approach without regard to sequence. *Id*. As noted above, Defendants did not violate Plaintiff's constitutional rights. Accordingly, they are entitled to qualified immunity.

In summary, Plaintiff has failed to sustain his burden of proof in response to Defendants' motions for summary judgment. Accordingly, Defendants' Motions for Summary Judgment (Docket #12 and #36) are granted and this case is dismissed in its entirety.

The court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the undersigned recommends granting Defendants' motion for summary judgment, the undersigned discerns no good-faith basis for an appeal. Should the court adopt the report and recommendation and should Plaintiff appeal this decision, the court will assess the $455 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $455 appellate filing fee in one lump sum.


Dated:       9/13/2011                              /s/ R. Allan Edgar
                                                    R. ALLAN EDGAR
                                                    UNITED STATES DISTRICT JUDGE